IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JPMorgan Chase Bank, N.A.,       :

    Plaintiff,                  :

  v.                               :       Case No. 2:06-cv-0095

Neovi, Inc. a/k/a/ Neovi Data    :       JUDGE GRAHAM
Corporation,
                                      :

    Defendant.

OPINION AND ORDER

    This case is before the Court by way of a motion for sanctions and/or to compel discovery filed by plaintiff JPMorgan Chase Bank ("Chase"). The motion asserts that defendant Neovi, Inc. should be sanctioned for providing less than candid responses both to interrogatories concerning the extent to which it does business in Ohio and to requests for admission concerning the authenticity of certain documents. Among other sanctions, Chase has asked the Court to deny Neovi's motion to dismiss for lack of personal jurisdiction because the discovery which is the subject of Chase's motion relates to Neovi's assertion that it does not do business in Ohio and therefore is not subject to personal jurisdiction in this forum. For the following reasons, the motion for sanctions and/or to compel discovery will be substantially granted. However, the Court will not, at this juncture, preclude Neovi from pursuing its motion to dismiss for lack of personal jurisdiction.

I.

    Because the motion for sanctions attacks the sufficiency of written discovery responses made by Neovi and involves a detailed understanding of the deposition testimony of Neovi's chief operating officer, James Danforth, a fairly thorough review of

the discovery matters at issue is necessary in order to place the motion in its proper context.  The following factual background is derived from materials filed with the motion to dismiss for lack of jurisdiction and filings made in connection with the motion for sanctions.

Neovi operates an internet-based check service which permits individuals to transmit checks to third parties.  This check service, known as "Qchex," sometimes results in the actual issuance and transmission of a printed check which is then treated as a check signed directly by the Qchex customer.  The way in which Neovi operates Qchex is apparently not foolproof.  Chase alleges in its complaint that it debited a number of its customers' accounts for checks issued by Neovi, only to discover later that these checks were issued without the authority of Chase's customers.  Chase avers that it has sustained losses in excess of $165,000 in connection with the payment of such checks, and asserts that Neovi is responsible for these losses under §3-403(a) of the Uniform Commercial Code.

Neovi disputes that it does sufficient business with Ohio residents to subject it to this Court's jurisdiction.  On April 10, 2006, it filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to change venue.  The motion was supported by an affidavit of James Danforth, Neovi's chief operating officer.  In his affidavit, Mr. Danforth asserted that Neovi has only one corporate office, located in San Diego, California, that it has neither personal nor physical assets in Ohio, and that its only relationship to Ohio is "a virtual presence through its web site."  Danforth Affidavit, ¶ 5.  Although Mr. Danforth also stated that Neovi does not target Ohio residents for marketing or business and does not intentionally avail itself of the protections of Ohio's laws, his affidavit did not specifically address the number of persons, whether Neovi's

customers or payees of checks issued on behalf of its customers, who have some contact with the State of Ohio such as a residence or bank account within Ohio.

Given the somewhat sparse nature of Mr. Danforth's affidavit, Chase sought leave to conduct discovery prior to filing its response to the motion to dismiss.  On May 3, 2006, without opposition from Neovi, the Court granted that request and set a response date to the motion of July 5, 2006.

The discovery did not proceed as rapidly as the parties anticipated.  Issues concerning both the sufficiency of Neovi's interrogatory answers and the need to protect its customer information through an appropriate protective order arose.  After conferring with counsel, the Court subsequently issued an order extending the date for the filing of a responsive memorandum to July 27, 2006, and directing Neovi to provide supplemental interrogatory answers by July 6, 2006.  The parties were also directed to agree on an appropriate protective order.

The protective order was signed on July 5, 2006.  However, additional issues arose, necessitating a second conference with counsel on July 14, 2006.  The Court subsequently vacated the date for the filing of Chase's memorandum on the personal jurisdiction issue and directed the parties to work out the details of additional discovery and to agree on a new filing date for the response.  Approximately two months later, Chase filed its motion for sanctions.  In that motion, Chase detailed the progress of the discovery and the extent of its dissatisfaction with Neovi's efforts to provide Chase information concerning the contacts between Neovi and any customers or payees who may reside or conduct business in Ohio.

Chase's first set of interrogatories consisted of eleven questions, all of which asked Neovi about any business contacts between Neovi and the State of Ohio or Ohio residents.  For

purposes of the present motion, the most significant interrogatories are the first seven, all of which Neovi responded to with the word "unknown."

As Neovi stated in response to Interrogatory No. 8, any new Qchex customer is required to sign up for service (presumably on an internet site) and enter certain information in order to create a customer account. Neovi did not indicate in its response to Chase's interrogatories whether the information requested from the customer on the registration page included an address for the customer, for payees designated by the customer, or for any bank accounts being used by the customer. The first seven interrogatories, which appear to have been premised upon the assumption that Neovi had acquired and retained such information from its customers, asked Neovi to identify from 2002 through the present the number of persons with Ohio addresses who registered for any Qchex service, who issued checks through that service, or to whom a Qchex check was transmitted. Other interrogatories asked for similar information about persons who had accepted a Qchex "End User License Agreement" and obtained a Qchex user ID and/or password. Chase also asked Neovi to compare fees or revenues generated from Ohio customers and the number of its Ohio customers to the total of Neovi's fees or revenues generated through the Qchex service and to the total number of its customers. Neovi denied knowing any of this information, but provided no explanation for its lack of knowledge. Mr. Danforth verified Neovi's responses.

Not convinced that Neovi simply did not know any information responsive to these interrogatories, Chase's counsel wrote a letter to Neovi's counsel asking for a detailed explanation of why Neovi was unable to answer the interrogatories. As a result of that letter and a conference with the Court, Neovi served supplemental responses to interrogatories. Those answers

indicated that Qchex customers were not required to provide an address in their account profile and they were also not required to provide addresses for payees. Mr. Danforth also verified the supplemental answers. The supplemental answers did not indicate whether customers, despite not being required to provide their addresses' or their payees' addresses to Neovi, had actually done so, or whether customer or payee addresses were available to Neovi in its customer database.

Frustrated by this second set of answers, which provided little additional information about the reasons Neovi could not determine the number or percentage of Ohio customers or payees with whom it dealt, Chase noticed the deposition of Mr. Danforth. That deposition was taken in San Diego, California on August 11, 2006. A transcript of that deposition was filed with the Court as Exhibit I to Chase's motion for sanctions. Mr. Danforth's deposition testimony is quite revealing concerning the manner in which Neovi responded to Chase's discovery requests.

First, Mr. Danforth testified that on or about July 3, 2006, Neovi changed the registration page on its website to require its customers to provide an address. However, he acknowledged that prior to that date, customers were requested to provide an address, although an address was not required for them to register, and that many did so. The same was true with respect to payees of checks, and was also true at one time for persons who paid Qchex fees with their credit cards. In fact, Mr. Danforth admitted that he personally searched Neovi's databases to determine whether any of its customers or their payees provided Neovi with an Ohio mailing address. He also prepared documents indicating the results of that search. Although he had been asked to produce any such documents in his deposition, he did not, stating that although he was aware that the deposition notice called for him to bring documents, he "must have forgot"

5

about the request. (Tr. 86). Mr. Danforth testified that the only reason Neovi indicated in sworn interrogatory responses that it did not know any information about whether it had dealt with Ohio customers or Ohio payees was that a customer could, if he or she so chose, enter an incorrect address either for himself or herself, or for the payee, so that Neovi could not verify whether any of the persons who had supplied it with Ohio addresses actually resided in Ohio.

    Chase also sent Neovi a set of requests for admission asking Neovi to admit the authenticity of certain checks which appeared to have been created through the Qchex service. Neovi responded that after reasonable investigation, it was unable to acquire sufficient knowledge either to admit or deny the authenticity of those documents. Chase had also sent interrogatories to Neovi asking it to explain any denials contained in its responses to the request for admissions. In those interrogatory answers, Neovi (again through Mr. Danforth) explained that because software which would permit the creation of checks such as the ones attached to Chase's requests for admissions was ubiquitous, the checks could easily be forgeries. At his deposition, after being asked to view the version of those checks contained in Neovi's own database, Mr. Danforth acknowledged that the material information on the checks whose authenticity was the subject of the request for admission was identical to the ones on Neovi's database. However, he persisted in his testimony that it was still not possible for Neovi to determine whether the documents in Chase's possession were forgeries. The fact that the checks attached to the request for admissions and Neovi's own version of those checks on its database were substantially identical was not disclosed in Neovi's interrogatory responses.

    Following the deposition, Chase's counsel requested in a letter August 29, 2006, copies of the document showing the

results of Mr. Danforth's database search.  Counsel asked that the documents be produced within 14 days.  When Neovi did not respond to that letter, Chase filed its motion.  The documents, which were in Mr. Danforth's file and which he testified at his deposition could easily be retrieved, were not supplied to Chase until October 3, 2006.  It is on the basis of this set of facts that the instant motion will be decided.

II.

The procedures governing of and response to interrogatories are set forth in Fed.R.Civ.P. 33.  Rule 33(b)(1) reads as follows:

> Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

Although there is not an extensive amount of commentary on Rule 33(b) in the Advisory Committee notes, the notes to the 1993 Amendments do indicate that one of the purposes of the rule is to "emphasize the duty of the responding party to provide full answers" to interrogatories.  That duty is further highlighted by Fed.R.Civ.P. 37(a)(3), which provides that an evasive or incomplete answer is deemed to be no answer at all and can lead to the imposition of sanctions upon the party whose answer is either evasive or incomplete.  This same concept of full and complete responses to discovery requests is reinforced by Fed.R.Civ.P. 26(g)(2), which requires that every discovery response which is signed by an attorney or party (and, in the case of interrogatory answers, both are required to sign) "constitutes a certification that to the best of the signor's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is...consistent

with these rules...and not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." As the Advisory Committee notes state, "[r]ule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Further, those notes state that the provisions concerning the attorney's and party's duty to sign and certify the responses "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions" and also "provides a deterrent to...evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of...a response" to a discovery request. The attorney's signature is also a certification "that the lawyer has made a reasonable effort to assure that the client has provided all the information...available to him that [is] responsive to the discovery demand." Advisory Committee Notes to the 1983 Amendment to Rule 26.

These concepts are not simply idle words to be glossed over by parties or attorneys who believe that, when responding to discovery requests, evasion and obfuscation are still the order of the day. As one court has noted, "[c]omplete and accurate responses to discovery are required for the proper functioning of our system of justice." Wagner v. Dryvit Systems, Inc., 208 F.R.D. 606, 609 (D. Neb. 2001). "Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions." Id. at 610. Engaging in strained constructions of reasonably-framed requests in order to avoid providing information which is seen as detrimental to the client's position is simply not permitted. "Parties must respond truthfully, fully and completely to discovery or explain

truthfully, fully and completely why they cannot respond. Gamesmanship to evade answering as required, is not allowed." Miller v. Pruneda, 2004 WL 3927832 (N.D. W.Va. July 20, 2004), at *5.  "If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and 'set forth the efforts he used to obtain the information.'" Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996), quoting Milner v. National Sch. of Health Teach., 73 F.R.D. 628, 632 (E.D. Pa. 1977).  Consequently, "where a party...willfully failed to comply with discovery by construing interrogatories in such a literal fashion as to avoid supplying information that is within its possession and that it understands quite well to be the object of the discovery requests," sanctions are appropriate.  See Cullins v. Heckler, 108 F.R.D. 172, 176 (S.D.N.Y. 1985).  It is with these legal standards in mind that Chase's request for sanctions will be evaluated.

### III.

Under the above legal standard, it is clear that Neovi has willfully violated its obligation to act in a responsible fashion in providing discovery on the personal jurisdiction issue raised by its own motion.  It has engaged in exactly the type of gamesmanship which is expressly prohibited by the Federal Rules of Civil Procedure and universally condemned by the applicable case law.  Only a brief discussion is necessary in order to demonstrate why this is so.

As soon as Neovi filed its motion to dismiss for lack of personal jurisdiction and supported it with Mr. Danforth's affidavit, it placed at issue the extent of its contacts with residents of Ohio.  Although it did not precisely address that matter in its motion, contending generally that it maintains no business presence in the State of Ohio, Neovi and its counsel

were surely aware that once the motion was filed, Chase would make an effort to determine the extent to which Neovi came into contact with Ohio residents through its business activities. That would certainly include information about how many of Neovi's customers and how many of its customers' payees resided in or did business in the State of Ohio.  Further, when Chase requested leave to conduct discovery on this issue, and the Court (with Neovi's assent) granted that request, it should have been apparent to Neovi that Chase intended to discover exactly such information.

Chase's interrogatories on this issue were precisely drafted.  They did not ask Neovi to admit that any of its customers or their payees were Ohio residents.  Rather, they simply asked Neovi to supply information from its files concerning how many of its customers and payees were identified by Ohio addresses.  As Mr. Danforth's deposition testimony ultimately revealed, it would have been a simple matter for Neovi simply to respond to that interrogatory by searching its database and providing the requested information.  Of course, if Neovi had reservations about the accuracy of that information, it could have so stated in its interrogatory response.  However, it elected to forego that reasonable approach to answering the interrogatories, simply providing a single-word answer without any explanation of why it did not know how many customers or payees were associated with Ohio addresses.

When requested to supplement these responses, Neovi did little more than repeat its original assertion that it lacked knowledge.  It compounded its efforts to cloud the issue by stating that customers were not required to provide such information.  It neglected to say, however, that some of its customers actually provided such information and that such information could be retrieved from its database.  That

description of its capabilities was withheld until Mr. Danforth's deposition was taken.  Even at his deposition, Mr. Danforth continued to conflate the issue of whether its customers were actually Ohio residents with the issue of whether they had provided Ohio contact information.  He also "forgot" to bring to the deposition with him the results of the research which he had done in order to answer the question posed by Chase, and the documents reflecting that research were not transmitted to Chase until almost two months after the completion of the deposition.  No reasonable person could describe this pattern of discovery responses as reasonable, full, complete, undertaken in good faith, or in compliance with the letter and the spirit of the Federal Rules of Civil Procedure.

    Similar observations can be made with respect to the way in which Neovi approached the requests for admission.  From the factual background described above, it is clear that Neovi had no reasonable basis upon which to deny the authenticity of most of the documents attached to the request.  Of course, it was free to qualify its answer by stating that although there were no material differences between those documents and the ones contained on its database, it could not be absolutely sure that the documents were generated from its database rather than by some other means.  Again, any reasonable litigant would have understood the purpose for the request and would have understood that it had an obligation to confirm, at the very least, the fact that the documents appeared to be identical in all material respects to ones contained in Neovi's database.

    The Court is convinced that had Neovi been faithful to its obligations under the Rules of Civil Procedure, no additional discovery beyond the initial set of interrogatories, requests for admission, and interrogatories accompanying those requests

would have been necessary. Although Chase might have had some follow-up questions concerning the method and manner of Neovi's search of its records in order to provide answers, those could have been dealt with expeditiously between counsel and would not have necessitated a deposition. The Court concludes that Chase was unnecessarily required to contact the Court in order to obtain supplemental interrogatory answers and to take steps to arrange for and conduct Mr. Danforth's deposition. Further, Chase should not have been required to file and brief its motion to compel and for sanctions. It is therefore appropriate to award Chase all of its costs and expenses, including reasonable attorneys' fees, associated with those activities. The Court will set forth at the end of this order the procedure to be followed with respect to determining those amounts.

     Chase has also requested that Neovi either be precluded from litigating its motion to dismiss for lack of personal jurisdiction or that it be required to hand over its database so that Chase may make the appropriate searches for information relating Neovi's business contacts with the State of Ohio. The former request is an extreme sanction which, although it may ultimately be appropriate in this case, should not be imposed based upon the present circumstances. If Chase is awarded its costs and expenses for all unnecessary discovery and is given complete access to the database where the information it seeks is contained, it will be placed in the same position as if Neovi had complied with its discovery obligations. Consequently, the Court will direct that Neovi provide the database. Should the database prove incomplete or should it have been altered in such a way, either intentionally or otherwise, to prevent Chase from obtaining sufficient information on Neovi's Ohio contacts to make a meaningful response to the motion to dismiss, the Court will consider at that time whether an additional sanction of

preclusion is warranted.

                                IV.

     Based upon the foregoing, Chase's motion for sanctions or, in the alternative, to compel discovery (#15), is granted. Within 15 days, Neovi shall provide to Chase in a readable format those portions of its database which would allow Chase to obtain information concerning whether any customers, payees, or others utilizing Neovi's Qchex system provided Neovi with Ohio addresses.  That information shall include credit card information as described in Mr. Danforth's deposition.  Further, within 15 days, Chase shall submit to the Court a sworn itemization of its costs and expenses, including attorneys' fees, incurred in obtaining supplemental responses to its first set of interrogatories and in arranging and taking Mr. Danforth's deposition, as well as the costs and expenses associated with the filing and briefing of the motion to compel. If Neovi disputes the reasonableness of those costs, it shall file a response within 15 days thereafter, following which the Court will, if necessary, conduct an evidentiary hearing to determine the appropriate amount of costs and fees to be awarded.

     Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge