IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JPMorgan Chase Bank, N.A.,       :

    Plaintiff,               :

  v.                               :    Case No. 2:06-cv-0095

Neovi, Inc., a/k/a Neovi         :    JUDGE GRAHAM
Data Corporation,
                                 :
    Defendant.

ORDER

    On April 30, 2007, the Court held an evidentiary hearing on a motion for sanctions filed by plaintiff, JPMorgan Chase Bank, N.A.  The question presented at the hearing was whether defendant Neovi, Inc. had fully responded to discovery served upon Neovi following the filing of Neovi's motion to dismiss for lack of personal jurisdiction.  As reflected in prior orders of the Court, Chase had previously moved to compel responses to that discovery, and the Court had issued an order on November 14, 2006 granting the motion to compel.  In that order, the Court also concluded that Neovi had wilfully violated its obligation to act in a responsible fashion in providing discovery, and the Court imposed monetary sanctions.  Finally, the Court directed Neovi to provide to Chase "those portions of its database which would allow Chase to obtain information concerning whether any customers, payees, or others utilizing Neovi's QChex system provided Neovi with Ohio addresses."  The Court reiterated in an order filed on March 12, 2007, which set Chase's second motion for sanctions for hearing that "[t]he Court's order granting the motion to compel contemplated that the information provided [in response to that order] would be sufficient to allow Chase to

have access to all information currently held by Neovi concerning whether payors, payees, financial institutions, or credit card customers had provided Neovi with Ohio addresses."  The Court explained that it was its intent "that Neovi provide to Chase any and all information in its possession concerning Ohio addresses of users of Neovi's services in whatever form that information was maintained" and noted that if Neovi had "additional databases with such information or additional ways in which to access that information [beyond the databases produced in December, 2006], it would appear that its failure to provide the information directly violates the Court's order."  The purpose of the hearing was to determine whether such information and databases did exist.

As is more fully discussed below, it became apparent during the course of the hearing that Neovi did possess additional information about, at a minimum, both payees and financial institutions with Ohio addresses.  It also became apparent that Neovi may well have destroyed information about its own customers (or payors) who had given Neovi Ohio addresses, even after Neovi filed its motion to dismiss for lack of personal jurisdiction.  Finally, it became apparent that Neovi not only did not provide the information initially requested from it by interrogatories propounded more than a year ago, but it has yet to make a good faith effort to attempt to locate and provide that information to Chase.  For all of those reasons, the Court will grant the motion for sanctions and, among other sanctions, will preclude Neovi from maintaining its defense of lack of personal jurisdiction.

I.

The Court's record supplies some of the factual background for this matter.  As noted above, Neovi did provide some information to Chase in response to Chase's discovery requests and Chase's subsequent motion to compel, but it did not provide any computer databases containing Ohio addresses until after the

Court granted the motion to compel on November 14, 2006. In December, 2006, Neovi provided Chase with links to websites which contained information relating to persons who used the QChex service and produced a compact disc which contained two tables of information. Representative samples of that information were presented to the Court at the hearing by way of exhibits D2 and D3. The compact disc itself was marked as exhibit D1. Two witnesses, James Danforth, the chief operating officer of Neovi, and Kevin Goslar, a software engineer employed by Neovi, testified at the hearing. The Court will summarize the testimony of each witness below.

    Mr. Danforth testified generally about the nature of the QChex business (which is no longer operating). The QChex business permitted a customer to register with Neovi and thereafter to be able to generate checks from the customer's own bank account which could be either mailed from Neovi's location in San Diego, California or e-mailed to the check recipient. In either case, information which the QChex customer provided on the QChex website permitted the check recipient, using a printer and check paper, to print out a check drawn against the QChex customer's specified bank account. Neovi generally charged a fee for these services which, although ordinarily paid by a QChex check, could also (for some period of time) be paid by a credit card. As part of its normal business operations, Neovi maintained a database containing its customers' names and also a separate credit card database for customers who chose to pay in that fashion.

    According to Mr. Danforth, non-credit card customers were not required to provide either their own address or a payee address if they were using QChex to generate an e-mailed check. However, if they wanted a check physically mailed to the recipient, they would have to provide the recipient's address to

Neovi.  Although not required to do so, QChex customers could provide their own addresses on a web-based form.  If they did so, Neovi maintained a record of that address.

When Neovi was ordered to provide Chase with information about payor, payee, and other Ohio addresses, Mr. Danforth requested technical personnel at Neovi to do so.  As a result, Neovi produced two tables of data drawn from its overall database.  The first table is a "customer record" which reflects general customer information but does not include information about individual customer transactions.  The information on that table includes a login ID for each customer, the customer's name (in a column entitled "payee name"), an e-mail address, a country of origin, and certain information about the date on which the customer account was created and was updated, if ever.  The table also includes space for an address, but many of the address fields are blank because, as Mr. Danforth testified, providing address information was not mandatory.  Payee names were also included on this database because customer accounts were set up for their use.

Because the issue of credit card customers came up at his deposition, Mr. Danforth also had a printout made concerning credit card customers.  Exhibit D3 is a representative printout from this table.  The credit card table does not contain any address information, although that information would have been provided to Neovi so that the credit card billing could have been done properly.  Mr. Danforth had stated, under oath, that there would be addresses in this table, but he conceded at the hearing that his prior statement was not correct.

On cross examination, Mr. Danforth acknowledged that all of the QChex transactions ordered by Neovi's customers were also maintained by Neovi on its computerized database.  However, the engineers who assembled the two tables produced to Chase were not

asked to, and did not independently, produce tables reflecting these transactions.  Mr. Danforth acknowledged that both payor and payee addresses might appear in the transactions database.  Mr. Danforth testified that he understood that, when he instructed his technical people to produce data for Chase, one of the issues in this case was whether any of the QChex payees had addresses in the state of Ohio.  Finally, Mr. Danforth testified that although customer information was deleted from time to time because when the database reached a certain size it slowed the operation of the system, he was not aware that any deletions of information were made after Neovi filed its motion to dismiss for lack of personal jurisdiction, and he instructed Neovi's engineers to preserve that information.

    Mr. Goslar's testimony provided an interesting contrast to Mr. Danforth's.  Mr. Goslar is a software engineer who went to work at Neovi in October, 2005.  He was the one who compiled the data produced to Chase and he did so at Mr. Danforth's request.

    Mr. Goslar explained that all of Neovi's data is maintained on computer and that it is manipulable by a computer program which permits the information to be retrieved in various forms depending on the type of information being asked for.  Generally, however, the information stored on the computer consists of about fifty separate "tables" of data and is ordinarily retrieved by tables.  Information on one table may be linked to information on other tables.  So, for example, Neovi could produce information about a user which reflected not only the information on the "user table" (which was one of the tables produced to Chase) but information about all of the users' bank accounts or transactions.  He also acknowledged that there is a separate "transactions" table which has address information in it, particularly for payees to whom checks were delivered by regular mail.  He testified that there is a separate "check table" within

the database which has information concerning every check produced through the QChex system and includes, among other things, the addresses of the banks or other financial institutions on which the checks were drawn.  He testified that the check table might well have more or different addresses than the user table which was produced.

Finally, with respect to the deletion of information, Mr. Goslar testified that such deletion was done routinely and that Neovi's routine had not changed since April 10, 2006.  As a result, it is entirely conceivable that information about Ohio customers or payees was deleted after Neovi filed its motion to dismiss for lack of personal jurisdiction.  He could not give an estimate of how much of that information was destroyed, but testified he was never instructed to discontinue routine deletions of such information or to try to identify Ohio customers, financial institutions, or payees and to protect their information from routine deletion.  It is with these facts in mind that the second motion for sanctions will be decided.

## II.

The legal standard under which Neovi's conduct is to be judged is not seriously in dispute.  It is sufficient to note that if the Court finds, as a matter of fact, that any party upon whom discovery has been served has deliberately and wilfully failed to provide the requested information, that party can be sanctioned.  If the noncompliance persists despite a Court order granting a motion to compel discovery, even harsher sanctions are typically appropriate.  The willful disregard of a discovery order issued by a Court is enough to justify the most severe sanctions available under Fed.R.Civ.P. 37, which can include disposing of entire cases by way of either a default judgment or a dismissal order simply because one of the parties has chosen to disregard its discovery obligations and order of the Court which reinforce the need for parties to participate in the discovery

process.  See generally Bratka v. Anheuser-Busch, 164 F.R.D. 448 (S.D. Ohio 1995).

Here, the Court continues to be confounded by Neovi's approach to discovery.  Neovi was the party that put its business contacts with the State of Ohio at issue by filing a motion to dismiss or transfer for lack of personal jurisdiction.  It knew at the time it filed the motion that it, and not Chase, had control over the most relevant information concerning its contacts with Ohioans, whether they were its own customers, recipients of checks generated by those customers, or financial institutions upon which such checks were drawn.

Chase's written discovery requests were sufficiently well-drafted to call for the production of all that information.  The Court's prior order details how Neovi attempted to frustrate Chase's discovery efforts by misinterpreting the requests and then responding, in completely unwarranted fashion, that the answers to Chase's inquiries were "unknown."  When the full measure of Neovi's unreasonable conduct was revealed at Mr. Danforth's deposition, the Court ordered Neovi to produce the responsive information and sanctioned it for its intransigence up to that point.

Clearly, Neovi made no meaningful attempt to comply with the Court's order.  Rather than producing its entire database, which contained multiple tables with Ohio contact information, it produced only two select databases, one of which had no such information in it.  Despite a second motion to compel and the issuance of a Court order that questioned the completeness of that production, it made no further effort to supplement its responses.  At the hearing, one of its employees, Mr. Goslar, testified candidly that Neovi had more information about Ohio contacts than it had produced, but that he was not asked to retrieve that information.  The individual to whom Neovi delegated the responsibility for responding fully to Chase's discovery requests, Mr. Danforth (the same individual whose

7

behavior led directly to the first order awarding sanctions) either deliberately or recklessly failed to undertake any meaningful investigation about the extent to which the various tables contained within Neovi's database showed Ohio contact information. Had he asked Mr. Goslar a few simple questions (such as the ones posed to Mr. Goslar at the evidentiary hearing) he would have learned that Neovi had information in addition to that produced to Chase. Perhaps he did not want to learn that information, and hoped that neither Chase nor the Court would discover it independently, or perhaps he was fully aware of the fact that such information existed and simply chose not to produce it. Either way, his conduct, which is the conduct of Neovi for purposes of these proceedings, is a totally unreasonable response to the discovery obligations imposed by the Federal Rules of Civil Procedure and incorporated into the Court's order. See Bratka v. Anheuser-Busch, supra, at 460 ("defendant's lack of diligence in planning and executing an effective search for the relevant documents evidences the absence of good faith, and a lack of respect for the seriousness of its duties under the Federal Rules of Civil Procedure and the importance of full and fair discovery under the Rules"). The failures in this case are heightened by the fact that Neovi made no effort to segregate and retain Ohio contact information after it filed its motion. Mr. Danforth's testimony to the contrary is, in light of Mr. Goslar's statements, simply incredible.

As a result, more than one year after Neovi filed its motion, Chase still does not have all of the information in Neovi's possession concerning Neovi's Ohio contacts. That is so despite its service of written discovery, several informal conferences about that discovery, a deposition, two motions to compel, and a Court order. There is absolutely no reason why Chase should be put to any more effort and expense in trying to frame a meaningful response to the motion to dismiss. Neovi has deliberately and stubbornly refused to produce the most basic

8

information about its Ohio contacts and has likely destroyed much of that information after it put those contacts directly at issue. It is hard to conceive of a set of circumstances where harsh sanctions are more appropriate. Clearly, less drastic sanctions (which the Court is required to consider, see Taylor v. Medtronics, 861 F.2d 980, 986 (6th Cir. 1988)), are insufficient, because the combination of a prior order compelling discovery and monetary sanctions proved insufficient to cause Neovi to make more than a passing attempt at producing the required information.

### III.

Based upon the foregoing, the Court grants the second motion to compel and for sanctions as follows. First, the Court orders Neovi to pay Chase's reasonable attorneys' fees and expenses incurred in connection with the second motion for sanctions. An itemization shall be submitted within fourteen days, and any objection to the amount requested is due within fourteen days thereafter. Further, the Court, as a discovery sanction, denies the motion to dismiss. Neovi shall file an answer to the complaint within ten days.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge