IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JPMorgan Chase Bank, N.A.,

    Plaintiff,

  vs.                                Case No. 2:06-cv-0095

Neovi, Inc., a/k/a Neovi        JUDGE GRAHAM
Data Corporation,

    Defendant.

## OPINION AND ORDER

This matter is before the court on Defendant Neovi, Inc.'s ("Neovi") motion for reconsideration of Magistrate Judge Kemp's order of March 12, 2007, in which Judge Kemp awarded Plaintiff JPMorgan Chase ("Chase") $22,370.75 in expenses and attorney's fees as a sanction for Neovi's discovery violations. Neovi contends, first, that the award of fees was inappropriate and, second, that if fees were appropriate, the amount of fees was excessive.

In response, Chase argues that Neovi has waived any challenge to Judge Kemp's decision to impose sanctions, but that even if the court considers Neovi's arguments, the award of sanctions is fully supported by the record. Chase asserts further that Neovi's objections to the amount of fees and expenses that Chase incurred are without merit. Finally, Chase contends it should also be awarded its fees and expenses incurred in opposing Neovi's motion for reconsideration. Because Judge Kemp's order of March 12, 2007, is not clearly erroneous or contrary to law, Neovi's objections are overruled and its motion for reconsideration is **DENIED**.

### I.  Standard of Review

When ruling on a motion for reconsideration of a magistrate judge's nondispositive, pretrial order, this court must sustain the order unless the findings are "clearly erroneous or contrary to law."  28 U.S.C. §636 (b)(1)(A); Fed. R. Civ. P. 72(a).  A magistrate judge's determinations are, thus, afforded considerable deference, and will only be reversed when the reviewing court is "left with a definite and firm conviction that a mistake has been committed."  In re Search Warrants Issued Aug. 29, 1994, 889 F.Supp. 296, 298 (S.D. Ohio 1995); see also Chesher v. Allen, 122 Fed.Appx. 184, 187 (6th Cir. 2005)(stating that the district court would have had to find the magistrate's decision clearly erroneous before reversing the decision).

### II.  Background

Neovi operates an Internet check service known as Qchex which permits individuals to transmit checks to third parties.  The check service sometimes results in the actual issuance and transmission of a printed check which is then treated as a check signed directly by the Qchex customer.  Chase contends that it debited several of its customers' accounts for checks issued by Neovi, but later discovered that the checks were issued without the authority of Chase's customers.  Chase filed this lawsuit seeking to recover the losses it allegedly sustained as a result of the fraudulent checks created through the Qchex service.

On April 10, 2006, Neovi filed a motion to dismiss for lack of personal jurisdiction and contended generally that it maintains no business presence in the State of Ohio.  The motion was supported by the affidavit of Neovi's Chief Operating Officer, Mr. James

Danforth.  Because Mr. Danforth's affidavit provided limited information about Neovi's contacts with Ohio, Judge Kemp, without objection from Neovi, granted Chase's request to conduct discovery prior to filing its response to the motion to dismiss.

Chase served written discovery upon Neovi which sought to determine the extent of Neovi's business contacts with the State of Ohio and Ohio residents.  The most significant interrogatories requested that Neovi state the number of persons with Ohio addresses who registered for any Qchex service, who issued checks through the service, or who were payees through the service.  Other interrogatories requested similar information about persons who had accepted a Qchex "End User License Agreement" and obtained a Qchex user ID or password.  Chase also asked Neovi to compare 1) the revenues generated from Ohio customers to the total of Neovi's revenues generated through the Qchex service and 2) the number of its Ohio customers to its total number of customers.  Neovi's response to each of these interrogatories was "Unknown."  Chase also served Requests for Admission ("RFA"), asking Neovi to admit that copies of checks that Chase attached to the RFA, some of which had Ohio addresses, were issued through the Qchex service.  Neovi responded that it was unable to determine whether the exhibits Chase attached were copies of Qchex checks.

After Chase's attempts to obtain candid responses from Neovi proved unsuccessful, Chase contacted the court and Judge Kemp held an informal discovery conference on June 22, 2006.  As a result of this conference, on June 26, 2006, Judge Kemp entered an order directing Neovi to supplement its responses to the interrogatories. Judge Kemp stated in his opinion and order of November 14, 2006

("November 2006 Order") that the supplemental "responses" Neovi served did little more than repeat what Neovi had previously stated and were an attempt by Neovi to further "cloud the issue by stating that customers were not required to provide such information." (Op. and Order, Nov. 14, 2006, at 10.) Frustrated by the second set of answers Neovi provided, which Judge Kemp determined "provided little information about the reasons Neovi could not determine the number or percentage of Ohio customers or payees with whom [Neovi] dealt," Chase noticed the deposition of Mr. Danforth. Judge Kemp then held yet another discovery conference to arrange the details of the deposition, which occurred, at Neovi's insistence, in San Diego, California.

After reviewing the testimony of Mr. Danforth, Judge Kemp observed that the testimony was quite revealing regarding Neovi's approach to its discovery obligations. First, Mr. Danforth acknowledged that all payor and payee addresses, as well as addresses of those paying fees to Neovi by credit cards are entered into Neovi's database and can be retrieved. Mr. Danforth testified that he had searched the database in preparing responses to the interrogatories, but that he had not retained the results of that search. Additionally, although the Notice of Deposition requested that Mr. Danforth bring all documents related to Neovi's answers to the interrogatories, he did not do so because he "forgot." (Id. at 11.)

Mr. Danforth also testified about Neovi's purported inability to verify the authenticity of the checks Chase attached to the RFA. Mr. Danforth acknowledged, after being asked to view the version of those checks on Neovi's database, that the material information on

4

the checks whose authenticity was the subject of Chase's RFA was identical to the ones on Neovi's database. This fact was not disclosed in Neovi's interrogatory responses, which were verified by Mr. Danforth. Despite the fact that the checks were substantially identical, Mr. Danforth persisted in his testimony that it was not possible for Neovi to determine whether the documents in Chase's possession were forgeries.

After Mr. Danforth's deposition, by letter of August 29, 2006, Chase requested that Neovi produce the copies of the documents which Mr. Danforth forgot to bring to the deposition within fourteen (14) days. When Chase received no response to that letter, it filed its motion for sanctions and/or to compel discovery.

In the motion, Chase requested that Neovi be precluded from disputing that it was subject to the court's personal jurisdiction, or, alternatively, that the court direct Neovi to produce its database. Chase also requested an award of counsel fees and costs incurred in the discovery dispute. In the November 2006 Order, the court granted the motion to compel and awarded Chase its costs and expenses incurred as a result of Neovi's discovery misconduct. Judge Kemp declined at that stage to impose the more severe sanction of precluding Neovi from proceeding on its motion to dismiss for lack of personal jurisdiction.

As the basis for his November 2006 Order, Judge Kemp determined that Neovi had engaged in sanctionable discovery conduct. Judge Kemp expressly stated that because Neovi had "willfully violated its obligation to act in a responsible fashion in providing discovery on the personal jurisdiction issue raised by

5

its own motion," (id. at 9), Chase was entitled to all of its costs and expenses, including reasonable attorneys' fees, incurred as the result of Neovi's conduct.

Chase was instructed to provide the court with a sworn itemization of its costs and expenses incurred in obtaining supplemental responses to its first set of interrogatories and in arranging and taking Mr. Danforth's deposition, as well as the costs and expenses associated with the briefing and filing of its motion to compel. Neovi was provided with an opportunity to challenge the reasonableness of Chase's costs and did so. Neovi, however, did not file any objection to Judge Kemp's November 2006 Order until the motion presently before this court.

After briefing on the issue of the appropriate amount of attorneys' fees and expenses was completed, Judge Kemp entered an order dated March 12, 2007 ("March 2007 Order") in which he determined the amount of fees and expenses Neovi would be required to pay Chase. With the exception of $436.10 in attorneys' fees which Judge Kemp concluded Chase would have incurred even if Neovi had not engaged in the sanctionable conduct, Judge Kemp awarded all of the fees and expenses submitted by Chase. On March 22, 2007, Neovi filed its "Motion for Reconsideration of Magistrate Judge's Order of March 12, 2007," which is now before this court.

### III. Discussion

**A. This court sustains Judge Kemp's award of sanctions granted in the November 2006 Order as Neovi's objections are untimely and, in any event, fail to demonstrate that any aspect of the order is clearly erroneous or contrary to law.**

**1. Neovi has waived its objections to Judge Kemp's award of sanctions.**

As an initial matter, Chase contends that Neovi has waived any objection to Judge Kemp's award of sanctions. The Federal Rules of Civil Procedure expressly provide the procedure by which a party that objects to a magistrate judge's order may obtain review by a district judge. Rule 72(a) provides in relevant part:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; <u>a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made</u>. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a)(emphasis added). Because Neovi failed to timely file its objection to the November 2006 Order, in which Judge Kemp expressly found that Neovi had willfully violated its obligation to act responsibly in the discovery process and was subject to sanctions, the court finds Chase's argument that Neovi has waived any objection to the award to be well taken.

It was in the November 2006 Order that Judge Kemp determined that Neovi had engaged in sanctionable conduct, not in the March 2007 Order. In the March 2007 Order, Judge Kemp simply reiterated his findings in the November 2006 Order before he addressed the appropriate amount of sanctions to be awarded. While the November

2006 Order noted that further proceedings would be held to determine the <u>amount</u> of fees and expenses to be paid, it was nevertheless definitive and unequivocal that Neovi had engaged in sanctionable discovery conduct and that an award of costs and expenses was warranted. If Neovi had any objections to Judge Kemp's order, it was required to file such objections within ten days. <u>See</u> <u>Pinkerton's Inc. v. Shelly Pinkerton Corp.</u>, Nos. 98-1609, 98-1653, 1999 U.S. App. LEXIS 23320, at *12-13 (6th Cir. 1999)(stating that a party's failure to timely appeal a magistrate judge's discovery order within the ten days provided by the rule waives any claim that the magistrate erred). Neovi did not file any objections to Judge Kemp's November 2006 Order within ten days.

Neovi now seeks to challenge Judge Kemp's determinations in the November 2006 Order under the guise of its motion for reconsideration of the March 2007 Order. The court notes, however, that Neovi makes no arguments and offers no justification as to its failure to timely file objections to the November 2006 Order which awarded sanctions. The court therefore concludes that Neovi's attempt to challenge the award of sanctions is untimely and that Neovi may not now assign as error a defect in Judge Kemp's November 2006 Order.

    **2.** **Assuming arguendo that Neovi had not waived its objections to Judge Kemp's award of sanctions, any such objections nevertheless would be overruled as Neovi has failed to demonstrate, or even articulate, that any aspect of Judge Kemp's November 2006 Order is clearly erroneous or contrary to law.**

In the November 2006 Order, Judge Kemp carefully considered the discovery dispute between the parties and the relevant authorities, and provided the rationale supporting his conclusion

that Chase should be awarded its costs and expenses incurred as a result of the sanctionable conduct. Specifically, after finding sanctionable conduct by Neovi, Judge Kemp awarded three categories of costs and expenses, including attorney's fees, which Chase incurred that were: 1) associated with the filing and briefing of the motion to compel; 2) incurred in obtaining supplemental responses to the first set of interrogatories; and 3) incurred in arranging and taking the deposition of Mr. Danforth. Neovi has failed to demonstrate that Judge Kemp's order is in any way clearly erroneous or contrary to law. The court will address each of these categories of sanctions in turn.

Neovi seemingly argues in its motion for reconsideration that Judge Kemp awarded sanctions pursuant to the court's inherent power, which requires a finding of bad faith. The court finds, however, that Judge Kemp did not award sanctions pursuant to the court's inherent power, but pursuant to Rule 37 of the Federal Rules of Civil Procedure, which has no bad faith requirement. See First Bank v. Hartford Underwriters Ins. Co., 307 F.3d 501, 517 n.13 (6th Cir. 2002)(citing U.S. v. Claros, 17 F.3d 1041, 1047 n.4 (7th Cir. 1994)("We . . . have not required a showing of bad faith with respect to the imposition of sanctions under Rule 37.")). While Judge Kemp did not specifically articulate the subdivision of Rule 37 under which he awarded the sanctions, he nevertheless sufficiently catalogued Neovi's obstinate failure to comply with its discovery obligations to sustain an award under Rule 37(a)(4)(A) and Rule 37(b)(2).

9

### a. Expenses Incurred in the Briefing and Filing the Motion to Compel

Rule 37(a)(4)(A) provides in relevant part that if a court grants a party's motion to compel discovery, "the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees.  Fed. R. Civ. P. 37(a)(4)(A).  The rule expressly provides that the court shall order such reasonable expenses "unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." Id. As Chase's motion to compel discovery was granted, and none of these exceptions is applicable here, Judge Kemp's decision to award Chase its costs and expenses associated with the filing and briefing of the motion to compel is fully authorized under this provision.

The court also notes that Neovi's assertion that it was entitled to an evidentiary hearing before the court awarded sanctions is without merit.  While Rule 37(a)(4) provides that attorney's fees may be awarded after the parties have been afforded "an opportunity to be heard," this requirement may be satisfied when the parties have had the opportunity to submit briefs and affidavits to the court.  Johnson v. Cleveland Heights/University Heights School Dist. Bd. Of Ed., No. 94-3523, 1995 U.S. App. LEXIS 32102, at *8 (6th Cir. Sept. 6, 1995); see also Paladin Assocs. v.

Mont. Power Co., 328 F.3d 1145, 1164-65 (9th Cir. 2003); Langley ex rel. Langley v. Union Elec. Co., 107 F.3d 510, 515 (7th Cir. 1997). Rule 37(a)(4) initially provided that the court could award sanctions only after affording the parties an opportunity for a hearing. Johnson, 1995 U.S. App. LEXIS 32102 at *8. However, the rule was amended in 1993 to make clear that the court can consider such questions on written submissions as well as on oral hearings. Id. Here, not only did the parties make submissions to the court, but also Judge Kemp relied upon the deposition testimony of Neovi's Chief Operating Officer, Mr. Danforth, in finding that Neovi failed to comport with its obligations under the federal rules. Neovi may not now legitimately complain that it has not been afforded an opportunity to be heard.

      **b. Expenses Incurred in Obtaining Supplemental Responses to the First Set of Interrogatories**

Judge Kemp also awarded Chase the fees and expenses it incurred in obtaining supplemental responses to its interrogatories. Chase attempted, first, to obtain supplemental responses from Neovi without the court's involvement. After those extrajudicial efforts proved unsuccessful, Chase contacted Judge Kemp, who scheduled a discovery conference on June 22, 2006. As a result of that conference, Judge Kemp entered an order on June 26, 2006, directing Neovi to provide supplemental responses to Chase's interrogatories. For the reasons set forth below, this court concludes that Judge Kemp's award of the expenses Chase incurred in attempting to obtain complete responses to its first set of interrogatories was appropriate under Rule 37.

### i. Expenses Incurred Prior to the Court's June 26, 2006 Order Directing Neovi to Provide Supplemental Responses to Chase's Interrogatories

Judge Kemp's award of costs and expenses Chase incurred in obtaining supplemental responses to its first set of interrogatories prior to the June 26, 2006 Order, is authorized under Rule 34(a)(4)(A). The federal rules specifically provide that before a party may move to compel discovery, it must first certify that it made a "good faith effort" to obtain the discovery sought from the opposing party. Fed. R. Civ. P. 37(a). Chase would not have been able to move to compel discovery or recover any expenses it incurred in the process, had it not attempted to resolve the dispute without the court's intervention. Indeed, a major purpose of the discovery rules is to "encourage extrajudicial discovery with a minimum of court intervention." 8A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2288, 655-56 (2d ed. 1994).

Chase undertook such efforts to obtain responses from Neovi that comport with the requirements of the federal rules. It is well settled that parties must provide full and complete responses to interrogatories. Fed. R. Civ. P. 33(b). Rule 37(a)(3) also provides that an evasive or incomplete answer is deemed, for the purposes of subsection (a), to be no answer at all and can lead to the imposition of sanctions. Fed. R. Civ. P. 37(a)(3). This same concept that parties must provide full and complete responses to discovery requests is reinforced by Rule 26(g)(2) which states that the signature of an attorney or party verifying discovery responses, "constitutes a certification that to the best of the signor's knowledge, information, and belief, formed after a

reasonable inquiry, the request, response, or objection is . . . consistent with these rules . . . and not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 26(g)(2). Rule 26(g) imposes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g) Advisory Committee's Note. As demonstrated, <u>infra</u>, Neovi's responses to Chase's interrogatories, and indeed, its conduct throughout the discovery process, are wholly inconsistent with the letter and spirit of these rules.

Chase served interrogatories which Judge Kemp determined were precisely drafted and which sought to obtain information regarding Neovi's contacts with Ohio. Chase requested such discovery because Neovi moved to dismiss its complaint for lack of personal jurisdiction. Neovi's actions, thus, precipitated the need for Chase to obtain the requested discovery. Among other requests, Chase asked Neovi to specify from its files how many of its customers and payees were identified by Ohio addresses. Instead of complying with its obligations under the federal rules to respond fully and truthfully to the requests, Neovi, incredulously, in verified responses, contended that such information was "unknown."

Chase, in accordance with its obligations to engage in discovery in the manner prescribed by the rules and this court, attempted to confer with Neovi's counsel before seeking the intervention of the court to determine why such information was "unknown" by Neovi and to obtain the requested information. These extrajudicial efforts were unavailing, yet were nevertheless

13

required by the rules before Chase sought the involvement of the court.

The court finds that Chase's request for the discovery conference with Judge Kemp which occurred on June 22, 2006, was, in effect, a motion by Chase to compel supplemental responses to its interrogatories. In addition to the requirements of the federal rules, the local rules of this court require parties to exhaust among themselves "all extrajudicial means for resolving" the discovery dispute before contacting the court. S.D. Ohio Civ. R. 37.1. The rules further provide that "in lieu of immediately filing a motion under Rules 26 and 37, Fed. R. Civ. P., and S.D. Ohio Civ. R. 37.2, any party may first seek an informal telephone conference" with the court. Id. Chase did so and counsel for the parties participated in this conference, which resulted in Judge Kemp entering the order directing Neovi to provide supplemental answers to Chase's interrogatories. The court concludes that the expenses Chase incurred in attempting to obtain responses to its requests prior to making its oral motion in the conference, constitute the "reasonable expenses incurred in making the motion," within the meaning of Rule 37(a)(4)(A). Consequently, the award of such expenses, in addition to the expenses Chase incurred as the result of its participation in the conference itself, falls within both the letter and spirit of Rule 37(a)(4)(A).

### ii. Expenses Incurred After the Court's June 26, 2006 Order

Although Neovi was directed to supplement its responses to Chase's interrogatories in the order of June 26, 2006, Judge Kemp determined that:

14

> Neovi did little more than repeat its original assertion that it lacked knowledge. It compounded its efforts to cloud the issue by stating that customers were not required to provide such information. It neglected to say, however, that some of its customers actually provided such information and that such information could be retrieved from its database. That description of its capabilities was withheld until Mr. Danforth's deposition was taken.

(Op. and Order, Nov. 14, 2006, at 10-11.) Instead of simply providing truthful and complete responses to Chase's interrogatories regarding its Ohio customer and payee information, Neovi stated that the customers were not required to provide an address in their account profile and that they were not required to provide payee addresses. Judge Kemp determined that the answers, again verified by Mr. Danforth, "did not indicate whether customers, despite not being required to provide their addresses or their payees' addresses to Neovi, had actually done so, or whether customer or payee addresses were available to Neovi in its customer database." (Op. and Order, Nov. 14, 2006, at 5.) In light of Judge Kemp's determination regarding the purported supplemental responses, this court concludes that Neovi failed to comply with the court's order. Rule 37(b)(2) provides in relevant part:

> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this Rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just . . . .

Fed. R. Civ. P. 37(b)(2). Although Neovi was ordered to supplement its responses, as noted above, Judge Kemp determined that those

15

"responses" remained deficient and only served as a further attempt to thwart the discovery process.

Because of Neovi's refusal to comply with its discovery obligations and, indeed, this court's order, Chase noticed the deposition of Mr. Danforth. While this deposition would have been unnecessary had Neovi been forthcoming with the requested information, Judge Kemp observed that the testimony was nevertheless "quite revealing" of the manner in which Neovi undertook its obligation to respond to Chase's discovery requests. Judge Kemp noted that Mr. Danforth testified that the only reason that Neovi insisted in sworn interrogatory responses that it did not know whether it had conducted business with Ohio customers or Ohio payees was that a customer could, if he so chose, enter an incorrect address either for himself or for the payee. Yet, the discovery requests did not ask Neovi to admit that any of its customers or their payees were, in fact, Ohio residents. Judge Kemp correctly noted that "[e]ngaging in strained constructions of reasonably-framed requests in order to avoid providing information which is seen as detrimental to the client's position is simply not permitted." (Op. and Order, Nov. 14, 2006, at 8.)

Moreover, Mr. Danforth admitted in the deposition that he had personally searched Neovi's database to determine whether any of its customers or their payees provided Neovi with an Ohio mailing address. Again, instead of providing that information to Chase, or even admitting that such information was within Neovi's possession, it simply chose to be evasive and to engage in exactly the type of gamesmanship the federal rules prohibit. The court therefore finds that the award of expenses incurred in Chase's efforts to obtain

16

supplemental interrogatory responses after the court's order is sustainable, just, and appropriate pursuant to Rule 37(b)(2).

### c. Expenses Incurred in Arranging and Taking Mr. Danforth's Deposition

The court also finds that the order requiring Neovi to pay Chase's expenses and costs incurred in arranging and taking the deposition of Mr. Danforth is similarly authorized by Rule 37(b)(2). The very reason Chase had to notice the deposition of Mr. Danforth was because of Neovi's stubborn persistence in its failure to provide the requested and court-ordered discovery. Had Neovi initially complied with its discovery obligations and with Judge Kemp's order to supplement its interrogatory responses, Mr. Danforth's deposition would have been unnecessary. Indeed, Judge Kemp stated:

> The Court is convinced that had Neovi been faithful to its obligations under the Rules of Civil Procedure, no additional discovery beyond the initial set of interrogatories, requests for admissions, and interrogatories accompanying those requests would have been necessary. Although Chase might have had some follow-up questions concerning the method and manner of Neovi's search of its records in order to provide answers, those could have been dealt with expeditiously between counsel and would not have necessitated a deposition.

(Op. and Order, Nov. 14, 2006, at 11-12.) Because Neovi did not comport with the requirements of the federal rules and this court, the court finds that Neovi should be required to pay the cost and expenses Chase incurred in arranging and taking the deposition of Mr. Danforth.

The court also notes that Mr. Danforth testified that he "forgot" to bring to the deposition the results of the research he

17

conducted to answer the discovery requests posed by Chase, despite the deposition notice requiring such. Further, Neovi waited almost two months after the deposition to provide those documents to Chase. Judge Kemp determined: "No reasonable person could describe [Neovi's] pattern of discovery responses as reasonable, full, complete, undertaken in good faith, or in compliance with the letter and spirit of the Federal Rules of Civil Procedure." (Id. at 11.) Further, Judge Kemp expressly found that Neovi had "willfully violated its obligation to act in a responsible fashion in providing discovery on the personal jurisdiction issue raised by its own motion." (Id. at 9.) This court agrees. Consequently, Judge Kemp's award of the costs and expenses Chase incurred in arranging and taking the deposition is just and appropriate.

B.  **Neovi has failed to demonstrate, or even articulate, that any aspect of the March 2007 Order is clearly erroneous or contrary to law.**

The court has thoroughly reviewed Judge Kemp's March 2007 Order and finds that Judge Kemp, after an exhaustive review of the submissions of the parties, properly determined the appropriate amount of expenses and reasonable attorney's fees to which Chase is entitled. Neovi has failed to allege or demonstrate that any aspect of Judge Kemp's Order is clearly erroneous or contrary to law. Instead, Neovi largely repeats the same arguments regarding the unreasonableness of the attorney's fees and expenses Chase incurred as the result of its discovery violations which it made before Judge Kemp. Judge Kemp considered each of those arguments, as well as the factors courts routinely use to determine the reasonableness of the rates. Neovi contends that Judge Kemp did

not properly evaluate the fees, because he did not employ "other measures of reasonableness." Not only is this argument meritless, but also Neovi fails to direct the court to any other such measure or any legal support for its proposition. Neovi's objections are not well taken.

Judge Kemp carefully reviewed counsel's arguments and authorities to determine the amount of sanctions to impose against Neovi for its discovery conduct. Judge Kemp expressly determined that the rates were reasonable and provided the basis for his determination. As further evidence of Judge Kemp's careful review of Chase's submissions, Judge Kemp, sua sponte, disallowed a small portion of the fees which Chase would have incurred regardless of Neovi's sanctionable conduct. The court, therefore, finds that the March 2007 Order awarding the amount of sanctions is not clearly erroneous or contrary to law.

**C.   Chase is not entitled to the fees and expenses it incurred in opposing Neovi's motion for reconsideration.**

Finally, Chase requests that the court award the fees and expenses it incurred in opposing Neovi's motion for reconsideration. Chase directs this court to other appellate courts' holdings in this regard; however, the Sixth Circuit has stated that Rule 37 does not authorize sanctions for expenses related to opposing a motion for reconsideration. Youn v. Track, Inc., 324 F.3d 409, 421-22 (6th Cir. 2003)(citing Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group, 55 F.3d 463, 467 (9th Cir. 1995)). Chase's request is, therefore, denied.

## IV. Conclusion

For the foregoing reasons, the court hereby **DENIES** Neovi's motion for reconsideration of Magistrate Judge Kemp's order of March 12, 2007.

**IT IS SO ORDERED.**


Date: June 19, 2007				/s/ James L. Graham
						James L. Graham
						United States District Judge